EILEEN N. GRECO *v.* GEORGE GRECO ET AL.
(SC 17220)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 18—officially released September 6, 2005

*William F. Gallagher*, with whom, on the brief, was *Barbara L. Cox*, for the appellant (plaintiff).

*James R. Greenfield*, with whom was *Kelly P. Mai*, for the appellee (named defendant).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that

the trial court abused its discretion in awarding the plaintiff in a dissolution of marriage action 98.5 percent of the marital property plus alimony and attorney's fees exceeding the defendant's income. The plaintiff, Eileen N. Greco, appeals following our grant of certification[1] from the judgment of the Appellate Court reversing the trial court's judgment as to all financial orders imposed on the named defendant, George Greco.[2] *Greco* v. *Greco*, 82 Conn. App. 768, 777, 847 A.2d 1017 (2004). We conclude that the trial court abused its discretion by failing to consider adequately the parties' current financial circumstances in forming its judgment. Accordingly, we affirm the judgment of the Appellate Court.

The following background facts and procedural history are set forth in the Appellate Court opinion. "The plaintiff and the defendant were married on September 28, 1974. It was the second marriage for both parties. At the time of the marriage, the defendant had custody of his five children from his prior marriage and the plaintiff had custody of a child born during her prior marriage. In 1997, DNA testing revealed that the defendant is that child's biological father. The parties also had a child together born during their marriage.

"Before the parties were married, the defendant owned and operated a gasoline service station. After they were married, the defendant sold the service station and opened an auto parts business. The defendant's five children from his prior marriage were all involved

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court had abused its discretion in fashioning its financial orders?" *Greco* v. *Greco*, 270 Conn. 907, 853 A.2d 524 (2004).

[2] The plaintiff also named as defendants George Greco's five adult children from a previous marriage, two spray trusts established for the benefit of the two children of the marriage at issue in this case, and LDGG Limited Partnership, which is controlled by George Greco. Because he is the only defendant participating in this appeal, all references herein to the defendant are to George Greco.

in operating the auto parts business, Greco's Auto Parts, Inc., as was the parties' first child. The defendant also formed and controlled a partnership called LDGG Limited Partnership. Throughout the marriage, the plaintiff was a full-time homemaker, caring for the children and managing the household.

"In February, 2000, the plaintiff brought this dissolution action by a one count complaint, claiming an irretrievable breakdown in the marital relationship. She sought the dissolution of the parties' marriage, an equitable distribution of the parties' property, alimony and attorney's fees. On September 25, 2001, the plaintiff filed a three count third amended complaint. The first count was directed against the defendant and was identical to the one count in the original complaint. The second count was directed against the defendant, the defendant's five adult children from his prior marriage, two spray trusts established for the parties' two children and the LDGG Limited Partnership. That count alleged that the defendant's transfers of certain assets were fraudulent in violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq., and, therefore, they should be set aside and the assets returned to the marital estate.[3] The third count essentially was identical to the second count.

"On October 11, 2001, the defendant filed an answer and a counterclaim for dissolution of marriage. On October 30, 2001, the defendant's five children from his prior marriage filed an answer, special defenses and a

[3] "Between 1998 and 1999, the defendant transferred to his children, either directly or via trust, the majority of his stock in Greco's Auto Parts, Inc., and title to various parcels of real estate related to that business. Those assets were worth more than $1 million." *Greco* v. *Greco*, supra, 82 Conn. App. 771. Although the defendant originally had owned all outstanding shares in the automotive parts company, he transferred all but sixty-five of the 122 voting shares to his children. Thus, the defendant preserved his ability to control the corporation despite the transfer of nearly all of his equity to the children.

four count counterclaim. They also filed a claim for a jury trial. On that same date, the LDGG Limited Partnership and the trustee of the two trusts filed their answers and special defenses. On November 8, 2001, the plaintiff filed an answer and special defenses to the counterclaims of the defendant's five children from his prior marriage.

"After a lengthy trial, the court dissolved the parties' marriage on January 11, 2002, on the basis of irretrievable breakdown. The court also determined that the plaintiff failed to prove her fraudulent transfer claims by the requisite clear and convincing evidence. The court, however, stated that although it would not set aside the transfers or include the assets involved in the marital estate, it would consider the defendant's removal of those assets from the marital estate in fashioning its financial orders.

"In its orders, the court ordered the defendant to pay to the plaintiff $710 per week in alimony until the death of either party, the plaintiff's remarriage or her cohabitation. It also ordered the defendant to maintain his life insurance for the plaintiff's benefit and to provide health insurance for her for three years.[4] The court further ordered the defendant to transfer to the plaintiff his interest in the marital residence at 24 Sunbrook Road in Woodbridge. In addition, the court ordered the defendant to transfer to the plaintiff his stock in Greco's Auto Parts, Inc., or, alternatively, the value of that stock, which the court found to be $250,000.[5] Finally, the court ordered the defendant to transfer to the plaintiff his individual retirement account, which was valued at approximately $9900, and to pay to the plaintiff $100,000

[4] The life insurance and health insurance premiums cost $12,480 per year and $5972.16 per year respectively.

[5] Pursuant to the trial court's order, the defendant instead could opt to give the plaintiff a secured note promising to pay the $250,000 over ten years at 7 percent interest per annum.

in attorney's fees." (Internal quotation marks omitted.) Id., 769–72.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming the trial court improperly: "(1) overvalued the defendant's stock in Greco's Auto Parts, Inc., (2) improperly awarded the plaintiff 98 percent of the parties' marital assets, (3) improperly relied on gross income, rather than net income, in determining the defendant's alimony obligation, (4) improperly ordered the defendant to pay alimony and other expenses that exceed his available income, and (5) abused its discretion in awarding the plaintiff $100,000 in attorney's fees." Id., 769. The Appellate Court agreed with the defendant's third and fourth claims and reversed the trial court's judgment as to all financial orders, declining to reach the defendant's other claims. Id., 776–77.

On appeal, the plaintiff makes three claims. Specifically, she claims that the Appellate Court improperly: (1) disregarded the trial court's finding that the defendant was not a credible witness and placed the burden on the plaintiff to disprove the defendant's allegedly unsubstantiated allegation that the trial court's award of alimony was based on gross income rather than earning capacity; (2) held the trial court's financial awards unreasonable in light of the evidence presented at trial; and (3) reversed the trial court's $100,000 award of attorney's fees.

The defendant, in response, argues that the Appellate Court properly concluded that the trial court's alimony award was based on gross income rather than net income and properly disregarded the plaintiff's claim that the award reflected earning capacity. He further contends that the Appellate Court properly reversed the trial court's financial awards as unreasonable and contrary to law and held the award of attorney's fees

to be an abuse of the trial court's discretion.[6] We agree with the defendant's contention that the Appellate Court properly reversed the trial court's judgment, but we affirm the Appellate Court's judgment for different reasons.

At the outset, we note that "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). Furthermore, trial courts are endowed with broad discretion to distribute property in connection with a dissolution of marriage. *Bornemann* v. *Bornemann*, 245 Conn. 508, 531–32, 752 A.2d 978 (1998). With those caveats in mind, we address in turn the three parts of the trial court's financial award.

## I

## DISTRIBUTION OF MARITAL PROPERTY

Although a trial court is afforded broad discretion when distributing marital property, it must take into account several statutory factors. *Lopiano* v. *Lopiano*, 247 Conn. 356, 374–75, 752 A.2d 1000 (1998). These

---

[6] Additionally, the defendant supplied the following three alternate grounds for affirming the Appellate Court's judgment: (1) "The trial court erred in overvaluing the defendant['s] . . . stock in Greco's Auto Parts, Inc., which in addition to reaching a valuation without evidence, deprived the defendant of the means whereby he could comply with the court's orders with respect to division of assets and payment of alimony"; (2) "The trial court improperly awarded the plaintiff . . . over 98 percent of the total assets of the parties, the result of which was to contradict the court's specific finding that the conveyance of assets to the defendant's children was not a fraudulent conveyance and whereby the trial court effectively nullified its own finding that the conveyance was not fraudulent"; and (3) "The trial court erred in ordering the defendant . . . to pay [the] plaintiff . . . counsel fees in the amount of $100,000." We agree, in part, with the defendant's second alternate ground for affirmance.

factors, enumerated in General Statutes § 46b-81,[7] include "the age, health, station, occupation, amount and sources of income, vocational skills, employability . . . and needs of each of the parties . . . ." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, supra, 375. Although the trial court "need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor," it must take each into account. (Internal quotation marks omitted.) Id.

It is true that "trial courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 682, 830 A.2d 193 (2003). Generally, we will not overturn a trial court's division of marital property unless it "misapplies, over-looks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, supra, 245 Conn. 532. We must, however, consider, the paramount "purpose of a property division pursuant to a dissolution proceeding [which] is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." *Smith* v. *Smith*, 249 Conn. 265, 275, 752

---

[7] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

A.2d 1023 (1999). Under the circumstances of this case, an award of 98.5 percent of the marital estate, or $720,936.56 of the $731,870.21 estate, fails to capture this maxim.

Although the trial court stated that it had considered all of the statutory criteria when it fashioned the financial award, its final judgment indicates otherwise. As the trial court acknowledged, the defendant had only an eighth grade education, suffered from angina and other health problems, required several surgeries, underwent ongoing treatment from several physicians, and took nine different medications. The trial court also noted that the defendant's ability to work was severely compromised and indeed, he worked only a few hours per day. The defendant's primary source of income was from his automotive parts business, which paid him a gross salary of $73,840 per year. He apparently enjoyed some gambling winnings as well, although in varying amounts from year to year. Nothing in the trial court's judgment or memorandum of decision indicates that it considered the defendant's gambling winnings a viable source of income.

The term "station," as used in § 46b-81, refers to the parties' standard of living, which the courts carefully must consider when dividing marital property. *Blake* v. *Blake*, 207 Conn. 217, 232, 541 A.2d 1201 (1988); *Graham* v. *Graham*, 25 Conn. App. 41, 47, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). The purpose of dividing marital property is to preserve, as much as possible, the parties' existing standard of living, not to award property to one spouse to the complete exclusion of the other. Although an award of such magnitude might be permissible under some circumstances, the trial court's other financial orders render the current distribution impracticable. Indeed, the trial court's order that the defendant pay considerable alimony as well as maintain two insurance policies for the plain-

tiff's benefit exhausted his income. See also part II of this opinion. Given the court's order that he relinquish his stock in Greco's Auto Parts, Inc., which assured him a regular paycheck despite working only a few hours a day, the defendant's future employment prospects are uncertain at best.[8] The defendant's already diminished ability to generate income due to his age, health, lack of education, and other infirmities also militates against divesting him of any assets with which he could satisfy the trial court's other orders. See *Bartlett* v. *Bartlett*, 220 Conn. 372, 378 n.8, 599 A.2d 14 (1991) ("[i]n assigning marital property, the trial court must also consider the opportunity for each party to acquire future capital assets and income, as well as the contribution of each of the parties toward the value of their respective estates"). Thus, the trial court's orders leave the defendant destitute, while giving to the plaintiff all significant marital assets as well as the defendant's entire salary.

The plaintiff attempts to justify the disproportionate award by relying on allegations of fraud. Specifically, she relies on *Watson* v. *Watson*, 221 Conn. 698, 709, 607 A.2d 383 (1992), in which we stated that "the trial court in a dissolution action may properly consider as part of the marital estate property that has been

---

[8] Although the defendant's salary from Greco's Auto Parts, Inc., appears to have been his main source of income, we disagree with the Appellate Court's conclusion that the trial court's "taking the corporation into account in both the property division and in the award of alimony and other payments is, in essence, 'double dipping . . . .' " *Greco* v. *Greco*, supra, 82 Conn. App. 776. In *Krafick* v. *Krafick*, 234 Conn. 783, 804–805 n.26, 663 A.2d 365 (1995), we concluded that the consideration of a vested employee pension in both the property distribution and alimony award did not constitute "double dipping" unless "any portion of the pension assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of alimony." In the present case, the stock itself did not constitute a significant resource or source of income and the trial court did not attribute any such income (e.g. cash dividends) to the defendant in determining his income for the purpose of calculating alimony.

fraudulently transferred even though for some reason the trial court has chosen not to set aside the transfer."[9] In *Watson*, the trial court applied then General Statutes § 52-552, which required that "[t]he party seeking to set aside a conveyance as fraudulent bears the burden of proving . . . that the conveyance was made without substantial consideration *and* rendered the transferor unable to meet his obligations . . . ." (Emphasis added.) *Watson* v. *Watson*, supra, 707. After making a formal finding that the defendant had transferred property with fraudulent intent and without substantial consideration, the trial court in *Watson* declined to set aside the conveyance or include the value of the property in the marital estate because the conveyance had not rendered him unable to meet his obligations. Id., 706–707. This court reversed the trial court's order, concluding that, although the conveyance was not set aside because the second statutory element was unsatisfied, the trial court should have included the value of the property in the marital estate because the defendant had transferred it with the intent to defraud the plaintiff. Id., 708–709.

Although the plaintiff in the present case is correct in stating that a fraudulent conveyance not set aside may still be considered in the value of the estate, *Watson* does not support her claim that "the court could prop-

[9] The plaintiff alleged that the conveyances herein violated the Uniform Fraudulent Transfer Act, General Statutes §§ 52-552a through 52-552*l*. General Statutes § 52-552e (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

erly consider the value of the transferred stock and real estate as part of the marital [property]," in light of the fact that the trial court explicitly found that the conveyance at issue herein was *not* fraudulent. The determination of whether a fraudulent transfer took place is a question of fact and it is axiomatic that "[t]he trial court's [factual] findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999); see also *National Loan Investors, L.P.* v. *World Properties, LLC*, 79 Conn. App. 725, 731, 830 A.2d 1178 (2003) (" 'The question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier. . . . We will not disturb the trial court's factual findings unless they are clearly erroneous and unsupported by the record.' "), cert. denied, 267 Conn. 910, 840 A.2d 1173 (2004).

The trial court enumerated in detail the reasons supporting its finding that the plaintiff had not proven the existence of a fraudulent conveyance and we will not disturb that finding on appeal.[10] The plaintiff cannot

---

[10] In rendering its judgment, the trial court stated: "[T]he [defendant] . . . makes persuasive arguments supporting his reasons for the transfer. They include the following: a belief that [the plaintiff] would inherit a substantial amount of money from her father (since realized to be approximately $186,000); an intention to transfer to the [plaintiff] his interest in the marital residence which had substantial equity . . . from the time they were very young, he had often promised his children that the business and its related property would be theirs; the children, to varying degrees worked in the business, often very long hours for less than fair market wages, in anticipation of ultimately having ownership of the business and its related property; long before the dissolution of the marriage was commenced, he discussed

justify the vastly disproportionate property distribution by pointing to mere allegations of fraud, which the trial court itself explicitly found insufficient to meet her burden of proof. Accordingly, we conclude that the Appellate Court correctly concluded that the trial court abused its discretion in making its distribution of the marital property.

## II

## ALIMONY AND RELATED PAYMENTS

Trial courts also are afforded wide discretion in awarding alimony, provided that they consider all of the criteria enumerated in General Statutes § 46b-82.[11] *Sunbury* v. *Sunbury*, supra, 210 Conn. 174. These criteria are essentially identical to those set forth in § 46b-81, which applies to the distribution of marital property.

Here, in addition to awarding the defendant less than 2 percent of the total marital assets, the trial court also ordered him to pay the plaintiff $710 per week in alimony and to maintain for her benefit two substantial insurance policies.[12] Should the defendant elect to turn over his stock to the plaintiff, he still will be liable for more than $1000 per week in alimony payments and

with [the plaintiff] his intention to transfer the business and the accompanying property to the children . . . ."

[11] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

[12] The trial court ordered the defendant to maintain a life insurance policy in the amount of $198,500 at a cost of $12,480 per year and a health insurance policy at a cost of $5972.16 per year for the plaintiff's benefit.

insurance premiums, plus $100,000, payable in $20,000 installments over a period of five years, in attorney's fees. On the other hand, if the defendant exercises his option to retain the stock in his company, he faces the daunting task of paying the plaintiff either an additional $250,000, or delivering to her a promissory note with adequate security through which he promises to pay to her $250,000 over a period of ten years at 7 percent interest per annum.

The defendant's annual salary of $73,840, reduced by $36,920 per year for alimony payments, $12,480 per year for life insurance premiums, $5972.16 per year for health insurance premiums, and $20,000 per year in attorney's fees, results in an annual gross income deficit of $1532.16 per year. *Greco* v. *Greco*, supra, 82 Conn. App. 774. If the defendant's net income, which he reported to be $53,872 per year, is correct, the payment of alimony and insurance premiums alone leave the defendant with an annual net income deficit of $1500.16. Id. Additionally, if the defendant were to choose to retain his stock in Greco's Auto Parts, Inc., he would be required to pay the plaintiff an additional lump sum of $250,000 or $34,832.52 per year for ten years. Id., 776 n.15.

The trial court's order is irreconcilable with the principle that alimony is not designed to punish, but to ensure that the former spouse receives adequate support. See *Fattibene* v. *Fattibene*, 183 Conn. 433, 441, 441 A.2d 3 (1981). Requiring that the defendant pay alimony that consumes his income and distributing the marital property in this manner offends the long settled principle that the defendant's ability to pay is a material consideration in formulating financial awards. *Casanova* v. *Casanova*, 166 Conn. 304, 304–305, 348 A.2d 668 (1974); see also *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 642–43, 736 A.2d 190 ("[i]t is hornbook law that what a spouse can afford to pay for support

and alimony is a material consideration in the court's determination as to what is a proper order" [internal quotation marks omitted]), cert. denied, 251 Conn. 920, 742 A.2d 359 (1999).

The plaintiff contends that the trial court was entitled to consider the defendant's "unreported [income]" in fashioning its alimony award. Although there was some testimony supporting the existence of such income, the trial court's memorandum of decision does not refer to the defendant's alleged practice of deleting invoices and pocketing money from cash sales or otherwise "skimming" from his business, and the trial court apparently did not consider these alleged practices in formulating its award. The only sources of income mentioned by the trial court, aside from the defendant's salary and occasional gambling winnings, were "periodic cash gifts" from one of the defendant's children and some weekly cash amounts that the defendant brought home for incidentals. These small, inconsistent and largely unsubstantiated cash sums cannot justify the otherwise excessive award of alimony that the trial court ordered in this case. See *Schmidt* v. *Schmidt*, 180 Conn. 184, 190, 429 A.2d 470 (1980) (alimony award factoring in unsubstantiated claim that husband made substantial money as commodities broker was improper where no concrete evidence existed as to specific amounts of such income).

We are acutely aware that trial courts have wide discretion to formulate remedies in domestic relations cases, and we reiterate that "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . ." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, supra, 210 Conn. 174. Nevertheless,

when invoking principles of equity, a court must examine both the public policy implicated and the basic elements of fairness. *DiLullo* v. *Joseph*, 259 Conn. 847, 853, 729 A.2d 819 (2002).

Under the trial court's order, the defendant was forced to the brink of abject poverty by his obligations to pay the required alimony and insurance premiums, and then stripped of any means with which to pay them by the disproportionate division of the marital assets. Such an order constitutes an abuse of discretion in light of the defendant's age, poor health and compromised ability to work.[13] See General Statutes §§ 46b-81 and 46b-82.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[13] Because we conclude that the trial court abused its discretion regardless of whether it based its orders on the defendant's gross income, we find it unnecessary to address the plaintiff's argument that the Appellate Court improperly overturned the trial court's alimony award on that basis. Furthermore, because awards of attorney's fees are inextricably linked with the parties' financial situation, we need not address the reasonableness of the trial court's award of $100,000 in attorney's fees in light of our conclusion herein, which will require the issuance of new financial orders. See General Statutes § 46b-62 ("[i]n any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213v, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation, or support of a minor child, either parent to pay the reasonable attorney's fees of the other *in accordance with their respective financial abilities* and the criteria set forth in section 46b-82" [emphasis added]).