JANET L. SZEGDA *v.* RONALD H. SZEGDA
(AC 26565)

Schaller, Harper and Lavine, Js.

Argued April 27—officially released September 12, 2006

*Bruce S. Beck*, for the appellant (plaintiff).

*W. Bruce Louden*, with whom were *Brette H. Logan* and, on the brief, *Douglas I. Fishman*, for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiff, Janet L. Szegda, appeals from the judgment of the trial court dissolving her marriage to the defendant, Ronald H. Szegda. The plaintiff takes issue with the court's financial orders and awards, claiming that (1) the court abused its discretion by entering financial orders in this case, (2) the court's distribution of marital assets and alimony award were not supported by the evidence, and (3) the court's financial awards on her behalf generally were insufficient. We affirm the judgment of the trial court.

The parties were married on June 12, 1971. They are the parents of three children, none of whom are minors. Claiming an irretrievable breakdown in the marital relationship, the plaintiff brought this dissolution of marriage action by complaint dated October 23, 2002. The

plaintiff sought a dissolution of the marriage, a convey-
ance of the defendant's interest in certain real property,
and an equitable division of the parties' assets, counsel
fees, alimony and other "just and proper" relief. The
defendant admitted the allegations of the plaintiff's
complaint and filed a cross complaint in which he
sought a dissolution of the marriage, an equitable divi-
sion of the parties' assets, an equitable division of "fam-
ily income" in the form of alimony and other
"reasonable and equitable" relief. By memorandum of
decision filed April 4, 2005, the court dissolved the
parties' marriage and issued financial orders. The plain-
tiff timely filed a motion to reargue, which the court
denied on April 28, 2005. This appeal followed.

I

The plaintiff first claims that the court abused its
discretion by entering financial orders in this case.
We disagree.

Our rules of practice require parties in a marital disso-
lution action to file "a sworn statement substantially
in accordance with a form prescribed by the chief court
administrator, of current income, expenses, assets and
liabilities. . . ." Practice Book § 25-30 (a). "Practice
Book § 13-15 imposes a continuing duty, during trial,
to correct or supplement discovery responses. With
respect to dissolution proceedings, [our Supreme
Court] has established that the value of the parties'
assets must be determined as of the time the judgment
of dissolution is rendered. . . . Therefore, it is clear
that the duty to update pertinent discovery responses
and to disclose facts relevant to that determination
necessarily must extend until the judgment is rendered.
Indeed, the sole purpose of disclosing pertinent finan-
cial information and mandating updated financial affi-
davits is to value the parties' assets properly, and it
would completely thwart that purpose if the duty to

disclose were to end before the asset valuation date." (Citations omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 696–97, 882 A.2d 53 (2005).

The plaintiff claims that the two financial statements submitted by the defendant, one dated March 2, 2005, and another dated December 2, 2004, were "by the [d]efendant's own admission" not reflective of his income. In both statements, the defendant represented that his weekly income as a "[s]elf-employed dairy farmer" was $190. In his March 2, 2005 affidavit, the defendant explained this figure as follows: "Exclusive of depreciation, profit of as much as $35,000 and loss of $37,000 going back to 2000. Current figure based on best estimate, with income from the sale of milk, hay, calves, timber and stone, and largely offsetting expenses." The plaintiff argues that, at least by the time that he filed his financial statement dated March 2, 2005, the defendant was in a position to provide the court accurate financial information concerning his farming business and that he did not do so. The plaintiff claims that the financial statements submitted by the defendant contradicted his testimony at trial as well as his income tax returns. The plaintiff claims that the court "abused its discretion by entering financial orders" because, she argues, the defendant's statements were inaccurate and incomplete. The plaintiff claims that the court "could not possibly have been able to fashion fair and equitable orders regarding alimony or property settlement [and that] the fact that it did so was an abuse of discretion."

The plaintiff did not object to the defendant's financial statements at the time of trial. The plaintiff did not ask the court to reject the matters asserted in the defendant's statement. We are unable to see how the fact that the court later entered financial orders, after it had received the defendant's statements as well as other evidence relating to the finances of the parties,

implicates the court's discretion. The sworn financial statements submitted by the parties were evidence of the matters represented therein. "A court is entitled to rely on sworn financial statements filed in dissolution actions, and when it finds it cannot, is entitled to draw adverse inferences which go to the core of the entire proceeding." *Voloshin* v. *Voloshin*, 12 Conn. App. 626, 628–29, 533 A.2d 573 (1987).

Apart from the fact that the plaintiff did not preserve this claim, she also has failed to brief it properly. In her brief, the plaintiff states in a conclusory manner that the defendant admitted at trial that his financial statements were inaccurate. In an equally conclusory manner, the plaintiff also states that the court relied on the statements when it entered the financial orders of which she now complains. The plaintiff has not attempted to demonstrate, by citation to the record or otherwise, the validity of either of these assertions. On the basis of our review of the court's memorandum of decision, we are not persuaded that the court relied on the financial information in the defendant's financial statements to the exclusion of the other evidence that also was properly before it. To the extent that the plaintiff challenged the accuracy of the defendant's financial statements at trial, the issue of whether to rely on the statements was a matter for the finder of fact, the court, to resolve. The plaintiff has not substantiated her claim that the court abused its discretion by entering financial orders in this case.

## II

The plaintiff next claims that the court's distribution of marital assets and its award of alimony to her were not supported by the evidence. Generally, the plaintiff argues that the evidence reflects the defendant's inability to comply with these orders. We disagree.

The court described the relevant marital assets. The parties' ownership interest in real estate was valued, before taxes owed, at $1,068,633. After taxes, this ownership interest was valued at $1,051,173. This real estate included the Robinson farm, in which the parties held an ownership interest valued at $702,000; the Szegda farm, in which the parties held an ownership interest valued at $201,633; and the Palmer farm, in which the parties held an ownership interest valued at $165,000. Mortgages in the amounts of $335,367 and $58,000 encumbered the Robinson and Szegda farms, respectively.

The court ordered that the defendant retain sole ownership of the Szegda and Palmer farms, and ordered the plaintiff to convey to the defendant her ownership interest in the Robinson farm. The court ordered the defendant to pay to the plaintiff a lump sum property settlement of $450,000, to be secured by a mortgage on the Robinson farm. The court ordered the plaintiff to move from the marital residence on the Robinson farm within two years and ordered the defendant to pay the plaintiff $100,000 upon this occurrence and the remaining $350,000 within four years of this occurrence. The court ordered interest, to be paid to the plaintiff, to begin to accrue on this $450,000 as of the date of judgment. The court further ordered the defendant to be responsible for any existing mortgages or debts associated with the three farms, as well as for repairs to the marital residence located on the Robinson farm. The court ordered the defendant to make alimony payments of $75 per week for a period of two years. The court permitted each party to retain ownership of their respective motor vehicles, permitted the defendant to retain ownership of his life insurance policy and IRA accounts valued at $3500 and ordered that the parties were responsible for their own debts and attorney's fees.

The court found the following relevant facts. At the time of the court's judgment, the defendant was sixty-one years old. The defendant was a lifelong dairy farmer with an income that was "modest by most standards," approximately $200 per week. The defendant grew feed on the Robinson and Palmer farms for his cattle, and his dairy operation was located on the Szegda farm. The defendant received an ownership interest in the Szegda and Palmer farms partially as a gift from family members, after working the farms for many years. The defendant and the plaintiff purchased the Robinson farm in 1980.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Rummel* v. *Rummel*, 33 Conn. App. 214, 220–21, 635 A.2d 295 (1993).

The plaintiff does not dispute the court's findings with regard to the marital assets and their value or its findings with regard to the defendant's income. The plaintiff's claim appears to be directed at the court's finding that the defendant could satisfy the $450,000 payment to her. Certainly, a party's "ability to pay is a material consideration in formulating financial awards." *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005). The court found that the defendant had the ability to satisfy this payment, stating: "The Robinson farm has equity of approximately $750,000 which is

adequate to secure the property settlement of $450,000 as well as refinancing by the defendant." These findings are supported by the evidence.

With regard to alimony, the plaintiff argues that the court improperly found that the defendant had the ability to make the alimony payments ordered. The court found that the defendant's weekly income was approximately $200. The court also heard the defendant's testimony that his business had been affected negatively by his marital problems and the divorce proceedings and that he hoped to make his business profitable in the future. The evidence supports the court's finding that the defendant could afford to pay the alimony awarded. Further, the plaintiff claims that there was "no rationale for the time limited alimony." Although the court did not explain why it limited its alimony award to weekly payments for two years, a reasonable rationale for this award appears in the record in that the plaintiff was entitled to live at the marital residence on the Robinson farm for two years after the court issued its judgment, following which time the defendant was obligated to pay her as part of the distribution of marital assets. Accordingly, we conclude that the court's alimony award is supported by the evidence.

### III

The plaintiff next claims that the court's financial orders, including its distribution of marital assets and its alimony award, were insufficient. We disagree.

We already have set forth the relevant orders in part II. The following additional findings of the court are relevant. At the time of the judgment, the plaintiff was fifty-three years of age and in good physical health. The plaintiff was a college student when she married the defendant in 1971. The plaintiff left school when her first child was born in 1972. The plaintiff resumed her

education in 1989, receiving a degree in 1991. The plaintiff worked for a short period of time as a substitute teacher and, in 2000, worked in a permanent teaching position. Due to budget cuts, the plaintiff's permanent position, in which she earned approximately $31,000 per year exclusive of insurance and retirement benefits, was terminated three years later. At the time of the court's judgment, the plaintiff was earning $70 a day as a substitute teacher while looking for a permanent teaching position.

The court also found that, when the parties married, the plaintiff possessed approximately $2000, which the parties spent on their wedding. The defendant possessed a herd of cattle as well as approximately $14,000, which was later spent as a down payment on the parties' first home. The defendant came to possess the Szegda and Palmer farms, farms that formerly were owned by members of his family, as a result of his lifelong work on the farms. The defendant received a one-half interest in the Szegda and Palmer farms, as well as the farm business, as a gift. When the defendant received the remaining interests in the farms, as well as his farm business, he gave a $100,000 mortgage to his father, which was held by his siblings. The parties purchased the Robinson farm, where they constructed their marital residence, in 1980, for $175,000.

The court found that the plaintiff was the primary caregiver for the parties' three children until they reached adulthood. The court also found that, although the plaintiff participated in farming chores, she "hardly" did as much work on the farm as she claimed. The court found that the plaintiff contributed to the marriage and to the farm business but that her "emotional difficulties" were the primary problem in the parties' marriage. The court found that the plaintiff engaged in "confused and irrational" behavior, and often, absent justification, accused her husband of participating in extramarital

affairs. The court detailed what it deemed to be examples of the plaintiff's mental "instability," for which she had received medical treatment. The court determined that the plaintiff's testimony concerning the breakdown of the marriage was "evasive and lacking candor" and that the defendant had been supportive of the plaintiff until the end of the marriage.

"The standard of review in family matters is well settled. A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Cushman* v. *Cushman*, 93 Conn. App. 186, 193–94, 888 A.2d 156 (2006).

In distributing marital assets, the court is governed by General Statutes § 46b-81 and the factors set forth therein. "The court need not give each factor equal weight or recount every factor in its decision as long as the decision reflects a proper consideration and a weighing of the statutory factors. On appeal, the [party challenging the court's ruling] bears the burden of proving to this court that the trial court did not consider the proper criteria.

"The purpose of a property assignment is to divide the ownership of the parties' property equitably. . . . [E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Further, we presume that the trial court properly considered all of the evidence submitted by the parties. . . . We will not retry facts or pass upon the credibility of witnesses or the weight to be given the evidence." (Citations omitted; internal quotation marks omitted.) *Rummel* v. *Rummel,* supra, 33 Conn. App. 222.

General Statutes § 46b-81 (c) provides that the court, in determining the nature and value of the property to be assigned in dissolution actions, "shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ." Section 46b-81 (c) also provides in relevant part: "The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

In its memorandum of decision, the court explicitly referred to the factors set forth in § 46b-81 (c) as well as their application in this case. The plaintiff asserts that "the trial court's combined financial award of $7800 in alimony coupled with less than half of the parties' assets in this situation was both unfair and inequitable." The plaintiff, noting that the parties had had a long marriage, that she deferred her education and career to raise her children and to assist the defendant in farm operations, and that she has an impaired capacity for future earning, argues that equity required the court to divide the parties' real property so as to award her the Robinson farm. The court aptly noted that ownership

of the farm was the "most contentious" point in the dissolution action.

The court set forth its rationale for awarding the Robinson farm to the defendant, stating: "[The defendant] has farmed some eighty-five acres [of the Robinson farm] for cattle feed or other crops for about twenty-five years. He needs this land if he is to continue his dairy farm operation, and it would be, as he said, devastating if he lost it. His proposal to pay [the plaintiff] a lump sum equitable amount of money for her interest makes equitable and economic sense to the court. The [plaintiff's] testimony that she envisions boarding horses on the property, teaching children about farming, having a Halloween maze and the like, are fanciful ideas not based on the existing realities." The plaintiff has not persuaded us that the court's findings in this regard are clearly erroneous.

Further, the plaintiff has not persuaded us that the court's division of the marital assets was inequitable. The court valued the parties' significant marital assets, which consisted of real estate, at $1,051,173. The court awarded the plaintiff a lump sum of $450,000. The court found that the plaintiff made a contribution to the marriage and to the raising of the parties' children. The court also found that the plaintiff's behavior was the primary cause of the breakdown of the marriage. The court found that the defendant "brought substantially more in assets to the marriage—approximately $80,000 more in money and cattle," that the defendant's "hard physical work in running the dairy farms" primarily resulted in the acquisition of marital assets, that the defendant was older than the plaintiff, that the defendant had a modest income and that the plaintiff, in light of her education and prospects of employment, should be able to sustain herself. Although the court found that the plaintiff contributed to the marriage, the court did not find that the plaintiff brought substantial assets

to the marriage or that she did more than "help" with farm chores. We deem the court's award of $450,000 to the plaintiff to be significant and equitable in light of these findings; the plaintiff has not persuaded us that the division of marital assets reflects an abuse of discretion.[1]

The plaintiff also argues that the court's award of alimony was insufficient. Alimony is governed by General Statutes § 46b-82 (a), which provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party [and] shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

The court made findings concerning the statutory factors. As stated previously, the court considered the length of the marriage as well as the fact that the plaintiff's behavior was the primary cause for the breakdown

---

[1] The plaintiff's argument that she was entitled to ownership rights in the Robinson farm is unavailing. The court properly treated this property, as well as other property obtained by the defendant during the pendency of the marriage, as a marital asset. The plaintiff does not support her assertion that the equitable division of the marital assets required the court to award her the Robinson farm rather than to award an amount of money that represented her interest in the real property that constituted the marital assets. There was a reasonable basis for the court's determination that the defendant should retain the Robinson farm for the benefit of his farm business. The court's significant lump sum award to the plaintiff reflected the court's consideration of the relevant statutory factors and, in our view, reflected the court's proper consideration for the plaintiff's contribution to the marriage and the acquisition of marital assets.

of the marriage. With regard to the occupation and sources of income of each party, the court found that the defendant had a "modest" income as a farmer of approximately $200 a week. The court found that the plaintiff, age fifty-three and in good health at the time of the dissolution judgment, had completed her education in 1991 and had teaching experience. The court noted that, when employed on a full-time basis, the plaintiff earned approximately $31,000 per year, as well as insurance and retirement benefits. In light of its findings concerning the plaintiff's education and employability, the court reasonably concluded that the plaintiff "should be able to sustain herself." The court noted that the parties' children are self-sufficient adults. As stated previously, the court's award of two years of alimony reasonably appears to coincide with the period in which the plaintiff is permitted to remain on the Robinson farm and prior to her first lump sum payment from the defendant. Accordingly, the award appears to be tailored to the goal of supporting the plaintiff prior to her receipt of marital assets. "[A]limony is not designed to punish, but to ensure that the former spouse receives adequate support." *Greco* v. *Greco*, supra, 275 Conn. 361. In light of the court's findings, as well as its award of $450,000 to the plaintiff in marital assets, we are not persuaded that the court's time limited alimony reflects an abuse of the court's discretion.

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

SCHALLER, J., dissenting. Our Supreme Court has explained that "the paramount purpose of a property division pursuant to a dissolution proceeding . . . is to unscramble existing marital property *in order to give each spouse his or her equitable share at the time of dissolution.*" (Emphasis added; internal quotation

marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 355, 880 A.2d 872 (2005). The majority affirms the trial court's financial orders in the dissolution of the thirty-four year marriage of the parties. I respectfully disagree because, in my view, the plaintiff, Janet L. Szegda, has not received her equitable share of the marital property. I am fully aware of the highly deferential review that we give to decisions of trial courts in family matters. See, e.g., *Simes* v. *Simes*, 95 Conn. App. 39, 45–46, 895 A.2d 852 (2006). I can also appreciate that this case presented unusual difficulties for the trial court. Despite these considerations, however, I disagree that the trial court acted within its discretion. The trial court is responsible for producing an evenhanded and realistic result that bears a relationship to the parties' contributions to the marital property. See *Bartlett* v. *Bartlett*, 220 Conn. 372, 378 n. 8, 599 A.2d 14 (1991) ("[i]n assigning marital property, the trial court must also consider the opportunity for each party to acquire future capital assets and income, as well as the contribution of each of the parties toward the value of their respective estates"). The trial court is bound to find facts accurately and consistently on the basis of the evidence and to apply them to produce orders with which the parties can realistically comply. "It is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order. *Casanova* v. *Casanova*, 166 Conn. 304, 304–305, 348 A.2d 668 (1974); *England* v. *England*, 138 Conn. 410, 85 A.2d 483 (1951)." *Misiorski* v. *Misiorski*, 11 Conn. App. 463, 469, 528 A.2d 829 (1987). Furthermore, the trial court's conclusions must be reasonably based on the findings. Cf. *Watson* v. *Watson*, 221 Conn. 698, 711, 607 A.2d 383 (1992); *Casey* v. *Casey*, 82 Conn. App. 378, 383–85, 844 A.2d 250 (2004).

While at first blush, the property division and other orders appear to be reasonably fair, a close examination

of the memorandum of decision reveals a disproportionate tipping of the scales in favor of the defendant husband, Ronald H. Szegda. Moreover, insofar as the disposition purports to be based on the facts found, it reflects a series of inconsistencies. By failing to take into account adequately the realities of the situation that are apparent from its fact-finding, the trial court arrived at a result that substantially undervalues the plaintiff's contributions to the marriage and undermines her interest in having at least the same degree of financial security as the defendant.

The plaintiff, who deferred her education and career seventeen years in order to raise the couple's three children and to contribute to the family and the family farming business, was awarded alimony of $75 per week for only two years plus a note for a sum of money representing about 40 percent of the equity in the three marital properties. The defendant was awarded the entire interest in the farm business, to which the plaintiff contributed in her multiple roles as homemaker, parent and worker. In total, the plaintiff received a mere 36 percent of the farm and property assets. It is significant economically also that her receipt of lump sum installments was postponed for as long as six years, a factor that reduces further the value of what she was awarded.

The reality of the parties' economic situation portrayed by the trial court's fact-finding is that, in two years' time, the plaintiff will most likely be faced with a predicament in which she has no place to live and no full-time employment. Instead, she will have the questionable right to attempt to collect, perhaps ultimately by foreclosure, a mortgage note that secures two lump sum payments.

The irony of this disposition is that the fact-finding fails to support the defendant's ability make these payments without surrendering the Robinson farm, which

the trial court apparently found essential to the farm business, so essential that its loss would be "devastating . . . ." Rather than allow the plaintiff to receive the residence portion of the Robinson farm, which the defendant actually proposed to the court, the trial court awarded all three marital properties to the defendant. The plaintiff was ordered to leave the family home within two years, reassured only by the defendant's obligation to pay her two sums of cash. The defendant's income was found to be minimal, barely enough to support one person, and, in all probability, insufficient to allow him to refinance the Robinson property. The trial court's orders appear to have created the likelihood of an economic crisis for both parties within two years. Short of attempting to sell the entire property, a result that would undermine the objectives of both parties, the facts found reveal no way to meet the financial orders.

Even with appropriate deference to the trial court's fact-finding, it is evident that the inconsistent application of the facts found in support of the trial court's disposition presents a disjointed picture of the evidence in this case. While the plaintiff's emotional illness was emphasized as the primary cause of the failure of the marriage, that illness was disregarded when the trial court speculated that "she should be able to sustain herself." While it was undisputed that the plaintiff devoted her life to being the primary caretaker for the couple's three children as well as helping with the farm work, her contributions, which the trial court recognized, were barely taken into account in the alimony and property awards. The conclusory remark that "she should be able to sustain herself" is not substantiated by the trial court's fact-finding. Although younger than the defendant, at fifty-three, her prospects for securing full-time teaching employment cannot be deemed likely because she has been unable to secure such employment and is not so employed at this time. Given her

age, illness and inability to secure a full-time position to date, a conclusion that she can support herself is sheer speculation and, therefore, clearly erroneous.

I further believe that the trial court failed to provide sufficient reasons for the time limited alimony award.[1] When alimony is time limited, the reasons must be adequately explained. *Mathis* v. *Mathis*, 30 Conn. App. 292, 294, 620 A.2d 174 (1993); see also *Clark* v. *Clark*, 66 Conn. App. 657, 668, 785 A.2d 1162, cert. denied, 259 Conn. 901, 789 A.2d 990 (2001). The result in this case is that the plaintiff received barely one-third of the net marital assets and did not receive the family residence or any other of the three parcels of real estate owned by the parties. There is no basis in the facts to conclude that she will be able to support herself in two years. Nor is there a factual basis to conclude that the defendant is capable of paying the lump sum, or, if he does, that it will enable her to sustain herself. The defendant retained all of the marital property, including the family residence and the entire interest in the farm business, more than $200,000. In my view, the facts found realistically provide no reasonable basis for the time limitation on alimony.

The underlying reason for the financial orders is to enable the defendant to continue his lifelong farming career. All three marital parcels, with a total value of more than $1 million, remain devoted to a farm enterprise that nets income of, at best, $200 per week and, by the defendant's estimate, a loss. The Robinson parcel, according to the trial court, is essential for growing crops for the other two parcels, a conclusion that is unsupported by the evidence.

On the basis of the trial court's fact-finding, the disposition arrived at by the trial court is not supported by the

---

[1] Our Supreme Court has explained that "alimony is not designed to punish, *but to ensure that the former spouse receives adequate support.*" (Emphasis added.) *Greco* v. *Greco*, supra, 275 Conn. 361.

evidence. The trial court's orders allow the defendant to continue a lifelong farming career that generates minimal weekly income while placing the plaintiff in a precarious economic position within two years when she must leave the family residence. Even if the disproportionate division of property were assumed to be reasonable, the trial court's fact-finding fails to support the likelihood that the defendant will be financially able to comply with the orders of making lump sum payments.

This case represents one of the very rare matrimonial cases in which a disappointed party persuades me that the financial orders entered incident to a dissolution action exceed the broad discretion of the trial court. See *Casey* v. *Casey*, supra, 82 Conn. App. 378. For the foregoing reasons, I believe that the financial orders represent an abuse of discretion. Accordingly, I respectfully dissent.