SARA S. MARSHALL *v.* STEPHEN P. MARSHALL

STEPHEN P. MARSHALL *v.* SARA S. MARSHALL
(AC 30207)
(AC 30442)

Bishop, Lavine and Borden, Js.

Argued October 20, 2009—officially released February 2, 2010

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd* and, on the brief, *Arnold H. Rutkin*, for the appellant (defendant in the first case, plaintiff in the second case).

*Anthony L. Cenatiempo*, with whom, on the brief, was *Gaetano Ferro*, for the appellee (plaintiff in the first case, defendant in the second case).

BORDEN, J. In this consolidated appeal, the defendant, Stephen P. Marshall, appeals from the judgments of the trial court dissolving his marriage to the plaintiff, Sara S. Marshall, and granting her motion to strike his petition for a new trial.[1] On appeal, the defendant claims that the court improperly: (1) precluded a future court from considering the plaintiff's income in a motion to modify alimony, (2) fashioned its financial orders with a punitive motive, (3) failed to correct erroneous financial orders concerning the distribution of the parties' tangible personal property and (4) granted the plaintiff's motion to strike his petition for a new trial for failure to state a claim on which relief could be granted. We affirm in part and reverse in part the dissolution judgment of the trial court. We reverse the judgment as to the petition for a new trial.

The following facts and procedural history are relevant to our resolution of the defendant's appeals. The parties were married on October 8, 1977. In September, 2006, the plaintiff filed an amended complaint seeking a dissolution of her marriage to the defendant, claiming that their marriage had broken down irretrievably. The plaintiff was fifty-four years of age and the defendant was fifty-seven. Both were in relatively good health. At the time of the trial, they had two children born of the marriage, both of whom were adults.

By memorandum of decision filed on May 30, 2007, the court, *Tierney, J.*, dissolved the parties' marriage.

---

[1] Stephen Marshall filed his initial appeal concerning the court's financial orders as the defendant in docket number AC 30207. Sara Marshall was the plaintiff in that action. Stephen Marshall filed his subsequent appeal with regard to the stricken petition for a new trial in docket number AC 30442. Sara Marshall was the defendant in that action. Subsequently, AC 30207 and AC 30442 were consolidated under Practice Book § 61-7. For clarity and convenience, throughout this opinion we refer to Stephen Marshall as the defendant and Sara Marshall as the plaintiff.

It found that the plaintiff, a real estate broker in New Canaan, had a gross weekly income of $1231 in 2006.[2] The court noted that her earnings recently had "been reduced due to the trauma of the divorce, the adverse real estate market and ten days of this dissolution trial."

As for the defendant, a thirty-three year career employee of International Business Machines Corporation (IBM) who had "proceeded up the corporate ladder" during the marriage and received "an excellent promotion to client executive for IBM's American Express account," the court found his gross weekly salary to be $4651. The defendant also "received stock options and incentive commissions. In 2006, he received $577,497 gross [income] in the form of cash and stock from stock options as well as $1,085,246 as incentive commissions for 2005 paid in early 2006. . . . Based on [his] earnings history, he anticipated receiving incentive commissions for the year 2006 early in 2007."

In addition to assessing the parties' financial state of affairs, the court examined the reasons for the marital breakdown and discussed these events in connection with the parties' proposed financial orders. The court found that the defendant's conduct, namely, an extramarital affair with another woman and the dissipation of assets in her favor, was, in fact, the cause of the marital breakdown.

The court entered comprehensive financial orders in connection with the parties' extensive assets. The plaintiff was awarded periodic alimony payments in the amount of $7410 per month along with one-third of the defendant's annual gross cash income in excess of $250,000. Several additional assets, including the net proceeds of the sale of the marital home located in New

---

[2] In a subsequent memorandum of decision on the defendant's motion to open and reargue and for articulation and clarification, the court found that the plaintiff's 2006 gross weekly earnings were $1299.

Canaan, a multitude of checking and savings accounts and a series of retirement, pension and IRA accounts that had been accrued by the defendant were ordered to be divided equally between the parties. The defendant also was ordered to pay the plaintiff a lump sum of $700,000 from his one-half share of the proceeds upon the sale of the marital home.

The financial orders also provided that the defendant was entitled to retire upon reaching the age of fifty-nine and that in the event of his retirement the periodic alimony payments to the plaintiff would be reduced to $1 per year. Furthermore, the alimony order would terminate upon the death of either party or the plaintiff's remarriage. The defendant expressly was permitted to seek modification of the alimony award pursuant to General Statutes § 46b-86 (b) if the plaintiff's financial needs were altered as a result of cohabitation. In accordance with § 46b-86 (a), however, the alimony order was otherwise "nonmodifiable as to term and amount." The provision precluding modification specifically provided that there was to be "no modification of the periodic alimony orders based on the [plaintiff's] employment, earnings or her income from any source, earned or unearned."

With regard to the parties' personal property, the plaintiff was awarded all of the furniture, furnishings, fixtures, bric-a-brac and appliances located in the New Canaan residence, and the defendant was awarded the same contents in what the court referred to as his Norwalk residence. It is undisputed, however, that this Norwalk residence, and the alleged contents within, were in fact nonexistent. See part I C of this opinion. Additional details concerning the court's property distribution orders will be set forth as required.

On June 18, 2007, the defendant filed a postjudgment motion to open and reargue and for articulation and

clarification of several of the court's financial orders (postjudgment motion). In relevant part, the defendant claimed that the terms and conditions concerning the alimony payments—specifically, the provisions providing for the modifiability and nonmodifiability of the order—were in conflict with one another and, therefore, reargument and clarification were necessary to resolve this alleged ambiguity. The court disagreed. In its memorandum of decision, issued in response to the defendant's postjudgment motion, the court denied the defendant's requested relief and stated that the provisions concerning the modifiability of the order were not in conflict because the clause permitting the modification of alimony was "relate[d] to cohabitation only."

The defendant also sought reargument as to the court's distribution of all the furniture, furnishings and household items located in the New Canaan marital home to the plaintiff. In connection with this claim, the defendant directed the court's attention to the problematic order awarding him the furniture, furnishings and household items located in the defendant's "current residence" in Norwalk. Because this residence, along with any personal property contained within, were in fact nonexistent, the defendant claimed that the court mistakenly had awarded the plaintiff all of the marital furnishings and household items. According to the defendant, these marital furnishings and household items included the defendant's own home office equipment, "significant" personal home entertainment items and pieces of art accumulated during the marriage.

In its memorandum of decision on the defendant's postjudgment motion, the court conceded that its financial orders erroneously had attributed nonexistent furnishings in a nonexistent residence to the defendant. The court went on to state that it was "inclined to grant a new evidentiary hearing on the division of personal property in order to properly and completely allocate

the personal property to each of the parties." Nevertheless, the court refused to open the personal property aspect of the judgment, in part, on the basis of the " 'mosaic rule.' "[3] The court feared that opening the judgment, even for the limited purpose of reallocating the parties' personal property, necessarily would subject the entire complex financial distribution plan to review. Furthermore, the court concluded that it lacked the authority to order a postjudgment reallocation of the parties' personal property because the language of § 46b-81 expressly calls for the division of marital assets "[a]t the time of [the dissolution] decree . . . ." General Statutes § 46b-81 (a). Accordingly, the court denied the defendant's motion to open the personal property component of the financial order. The court noted, however, that an appellate court is neither bound by the "mosaic rule" nor that jurisdictional limitation.

In August, 2007, while the defendant's postjudgment motion was pending, the defendant also filed a petition for a new trial pursuant to General Statutes § 52-270 (a). The substance of this petition concerned a highly contentious letter that had been erroneously filed with the court by counsel for the plaintiff only weeks into the underlying dissolution of marriage action. The letter was ruled inadmissible at trial but also was attached to a request for production that the plaintiff improperly had filed with the court. In his petition for a new trial, the defendant claimed that the filing of this request constituted a mispleading and a reasonable cause to order a new trial.

---

[3] The "mosaic rule" is premised on the concept that "[t]he rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *McMellon* v. *McMellon*, 116 Conn. App. 393, 395, 976 A.2d 1, cert. denied, 293 Conn. 926, 980 A.2d 911 (2009). The disturbance of a particular financial order, therefore, often requires the reconsideration of all orders. *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 125 n.4, 981 A.2d 1068 (2009).

In response, the plaintiff filed a motion to strike[4] the petition, claiming, inter alia, that the improper filing of the inadmissible letter accompanying the request for production was not a mispleading within the purview of § 52-270 (a). The defendant's petition for a new trial, therefore, according to the plaintiff, did not state a legally sufficient claim. The court agreed and concluded that because the document was not a pleading, the improper filing of it could not constitute a mispleading. Accordingly, the court granted the plaintiff's motion to strike the defendant's petition for failure to state a claim on which relief could be granted. The defendant thereafter appealed. Additional facts will be set forth as necessary.

## I

## DISSOLUTION JUDGMENT

The defendant claims that the court abused its discretion with respect to its financial orders by improperly (1) precluding a future court from considering the plaintiff's income in connection with a potential motion to modify alimony, (2) punishing him for being the cause of the marital breakdown and (3) failing to correct its erroneous award regarding personal property in the nonexistent Norwalk residence. The defendant seeks a new trial on the basis of any one of these alleged improprieties.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court

---

[4] Although the plaintiff styled the motion as a motion to dismiss the petition for a new trial, the trial court properly treated it as a motion to strike because it challenged the legal sufficiency of the petition. We do likewise.

to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

## A

The defendant first claims that the court abused its discretion by precluding a future court from considering the plaintiff's income in connection with a motion to modify its alimony order. We disagree.

As set forth previously, the court ordered that the alimony award was nonmodifiable, with the sole exception that the defendant had the right to seek modification in the event of the plaintiff's cohabitation. See General Statutes § 46b-86 (b).[5] The order precluding modification further stated that "no modification of the periodic alimony orders based on the [plaintiff's] employment, earnings or her income from any source, earned or unearned" was to be permitted.

It is a well settled principle of matrimonial law that courts have the authority under § 46b-86 to preclude the modification of alimony awards. See, e.g., *Eckert* v.

[5] General Statutes § 46b-86 (b) provides in relevant part: "In an action for . . . dissolution of marriage . . . in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the [court] may, in its discretion . . . modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

*Eckert*, 285 Conn. 687, 693, 941 A.2d 301 (2008) ("[n]on-modification provisions that are clear and unambiguous . . . are enforceable"); *Wichman* v. *Wichman*, 49 Conn. App. 529, 534–35, 714 A.2d 1274, cert. denied, 247 Conn. 910, 719 A.2d 906 (1998). Section 46b-86 (a) itself provides in relevant part that *"[u]nless and to the extent that the decree precludes modification . . .* any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party." (Emphasis added.) "This statute clearly permits a trial court to make periodic awards of alimony nonmodifiable." (Internal quotation marks omitted.) *Wichman* v. *Wichman*, supra, 535. The defendant does not suggest otherwise.

Instead, the defendant takes issue with the language found in the nonmodification provision that explains that a change in the plaintiff's employment or income is not a sufficient justification for modification. The defendant claims that this explanatory language also could be construed by a court in the future as restricting consideration of the plaintiff's income sources should he seek modification of alimony on the basis of cohabitation. The defendant contends that the court was without the authority to issue such a restriction because it conflicts with the language of General Statutes § 46b-82[6] that expressly calls for the consideration of the parties' income when fashioning an alimony award. The defendant's argument is without merit.

---

[6] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the [court] may order either of the parties to pay alimony to the other . . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court . . . shall consider the . . . occupation, amount and sources of income [and] employability . . . of each of the parties . . . ." These same factors are relevant in deciding whether an alimony award should be modified. *Borkowski* v. *Borkowski*, 228 Conn. 729, 736, 638 A.2d 1060 (1994).

The court's language that is directed at the consideration of the plaintiff's income sources does nothing more than emphasize the point that modification of the alimony award "based on the [plaintiff's] employment, earnings or her income from any source" was not to be sought. That language, however, is entirely unrelated to that portion of the financial order permitting modification under § 46b-86 (b). Indeed, the court in its memorandum of decision on the defendant's postjudgment motion made clear that the clause permitting modification related only to the plaintiff's cohabitation. The language in question immediately follows the sentence prohibiting modification and in no way implies that it is applicable to the order discussing the defendant's right to seek modification of alimony in the event of the plaintiff's cohabitation. Furthermore, the section discussing nonmodification is found several paragraphs away from and under a different sectional subheading than the order discussing the defendant's rights under § 46b-86 (b). Consequently, we fail to see how this superfluous explanatory language reasonably could be read in conjunction with the provision permitting the right to modify should the plaintiff cohabitate. The language pertaining to the nonmodifiability of alimony does not hinder the ability of a court from considering the income sources of the plaintiff upon confronting a potential motion to modify alimony pursuant to § 46b-86 (b).[7] Accordingly, we conclude that the court did not

---

[7] When presented with a motion to modify alimony brought pursuant to § 46b-86 (b), "once the court finds (1) cohabitation and (2) a change in the financial needs of the party receiving alimony and cohabitating, the court should engage in the . . . consideration of the § 46b-82 factors. . . . The use of the § 46b-82 criteria serves to ensure that the court has an updated picture of the parties' financial situation." *Gervais* v. *Gervais*, 91 Conn. App. 840, 854–55, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Because we conclude that the language precluding consideration of the plaintiff's income would not be applicable in a motion to modify on the basis of cohabitation, a future court would have no difficulty considering this factor, along with the rest of the criteria enumerated in § 46b-82, when making a potential § 46b-86 (b) determination.

abuse its discretion when ordering the nonmodifiable component of the alimony award.

## B

We turn next to the defendant's claim that the court abused its discretion by fashioning the financial orders with the intention of punishing the defendant for causing the breakdown of the marriage. We disagree.

The defendant contends that certain components of the court's financial orders, particularly the $700,000 lump sum distribution to the plaintiff from his one-half share of the proceeds from the sale of the marital home and the "substantial portion" of his income included in the alimony award, demonstrate that the property allocation was tainted by a punitive motive. The defendant maintains that this inequitable distribution conflicts with "the principle that alimony is not designed to punish, but to ensure that the former spouse receives adequate support." *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005).

As our Supreme Court has repeatedly stated: "[J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Internal quotation marks omitted.) *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 458–59, 975 A.2d 729 (2009).

Upon our thorough review of the record, we conclude that the financial orders were not fashioned with a

punitive motive and were well within the court's broad discretionary power. We cannot say that the court's orders concerning the alimony award, the lump sum distribution or the financial plan as a whole were conceived as a means for punishing the defendant. To the contrary, given the parties' almost thirty year marriage, the amount of the defendant's earnings, the total value of their marital assets and the fact that the defendant was the cause of the marital breakdown, the financial orders are within the court's broad discretion. The non-punitive nature of the judgment is further demonstrated by the court's permitting the defendant to retire upon reaching the age of fifty-nine and having the alimony payments reduced to $1 per year.

C

We next address the defendant's final claim that takes issue with the court's financial orders. The defendant claims that the court abused its discretion by refusing to open the judgment and to permit reargument to correct certain errors made in connection with the distribution of the parties' personal property. The defendant urges us to order that the entire dissolution judgment be opened and a full evidentiary hearing be held to resolve properly the reallocation of these assets. We agree in part.

As previously stated, "[t]he standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Szegda* v. *Szegda*, 97 Conn. App. 426, 432, 904 A.2d 1266, cert.

denied, 280 Conn. 932, 909 A.2d 959 (2006). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . ." (Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 331, 983 A.2d 293 (2009).

In this case, the court's decision was clearly erroneous insofar as it awarded the defendant "[a]ll furniture, furnishings, fixtures, bric-a-brac and appliances in [his] current residence, Norwalk, Connecticut." As set forth previously, the Norwalk residence and accompanying property were in fact nonexistent. The court acknowledged this mistaken finding in its memorandum of decision issued in response to the defendant's postjudgment motion and stated that it was inclined to grant a new hearing to sort out this error. The court, however, refused to open the judgment in light of perceived jurisdictional problems and potential "mosaic rule" conflicts.

Although "[w]e will not substitute our judgment for that of the trial court"; (internal quotation marks omitted) *O'Bymachow* v. *O'Bymachow*, 12 Conn. App. 113, 116, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987); we may conclude that a court abused its discretion by misapplying the relevant law. *Bartel* v. *Bartel*, 98 Conn. App. 706, 713, 911 A.2d 1134 (2006). With respect to its jurisdictional concerns, the court maintained that it was constrained by § 46b-81 from reallocating the parties' property postjudgment.[8] The court, relying on *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 814, 832 A.2d 90 (2003), concluded that it had "no jurisdiction to enter an order dividing the personal property after the [marital dissolution] decree." This reliance was misplaced.

In *Rathblott*, the defendant former husband filed a postjudgment motion seeking a hearing to address the

---

[8] General Statutes § 46b-81 (a) provides for the assignment of marital assets "[a]t the time of entering [the dissolution] decree . . . ."

division of certain marital personalty three years after the court had rendered judgment dissolving his marriage to his former wife. Id., 815. This property, including the Rathblotts' furniture, furnishings and miscellaneous tangibles, was not awarded to either party at the time of the dissolution decree. Id., 814. Instead, the court ordered that the Rathblotts were to complete the division of the property on their own. Id. The parties failed to agree on the allocation of this property, and, on the basis of the defendant's motion, the court ordered that it was to be auctioned. Id., 816.

On appeal, this court reversed the order and concluded that the trial court lacked the authority to issue orders concerning the distribution of the Rathblotts' personalty postjudgment. Id. "[A] court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." Id., 819.

The present case is distinguishable from *Rathblott* in two critical respects. First, in this case, the court expressly stated that it "reserve[d] continuing jurisdiction over the division of [the] personal property." In *Rathblott*, this court emphasized that cases in which a trial court expressly retains jurisdiction over its orders to ensure they are effectuated are "factually distinguishable" from those cases in which the court does not exercise this authority. Id., 819–20; see, e.g., *Bee* v. *Bee*, 79 Conn. App. 783, 796–97, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003).

Furthermore, in *Rathblott* the parties were seeking resolution as to the distribution of property that the court properly had considered and adequately ruled on in its underlying orders. In the case before us, the defendant was requesting that the court *correct* an erroneous component of its judgment. "It is familiar law that a court has the inherent authority to open, correct

or modify its judgments." *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 744, 867 A.2d 851 (2005).

In *Rome* v. *Album*, 73 Conn. App. 103, 807 A.2d 1017 (2002), this court addressed the tension between the nonmodifiable nature of personal property orders as required by § 46b-81 and the provisions of General Statutes § 52-212a, which provide for the discretionary opening of judgments. Id., 110. Noting that there was no authority for the position that a trial court should not be allowed to correct a clear oversight in connection with certain marital property orders, this court "conclude[d] that the law does not prevent the exercise of the trial court's authority to correct an omission in orders transferring personal property in a manner completely consistent with its earlier findings as to its disposition . . . ." Id., 113.

Insofar as the court's financial orders mistakenly awarded the defendant nonexistent furnishings in a nonexistent residence, the court must retain the authority to correct this error when confronted with a properly filed motion to open the judgment. To conclude otherwise would yield an untenable result. Because our case law is consistent with such an approach, we conclude that neither *Rathblott* nor § 46b-81 presented an obstacle that prohibited the court from mending its erroneous personal property orders.

Next, we address the court's conclusion that it could not open the judgment for the limited purpose of reallocating the parties' personal property without disrupting the "mosaic rule." Often, an isolated impropriety in a court's property distribution orders requires a review of all of the financial orders because it is part of the " 'carefully crafted mosaic' " that comprises the entire asset reallocation plan. *Casey* v. *Casey*, 82 Conn. App. 378, 389 n.9, 844 A.2d 250 (2004). "Under the mosaic

doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." Id. The defendant asserts that the "mosaic rule" requires the opening of the entire financial judgment so that the improprieties concerning the personal property orders can accurately be remedied. We disagree.

"Every improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." (Internal quotation marks omitted.) Id. In our view, the court's personal property distribution orders—including the plaintiff's award of all of the furniture, furnishings, fixtures, bric-a-brac and appliances in the New Canaan marital home and the problematic order awarding the same contents in the nonexistent Norwalk residence to the defendant—are only interwoven insofar as they relate to the parties' tangible personalty. They have no impact on or relationship to the rest of the court's financial mosaic and are completely severable from the other financial orders. Indeed, it is clear from the parties' proposed financial orders that they regarded the tangible household and personal items as severable from the rest of their considerable assets. The plaintiff, in the "Nonretirement Assets" section of the orders she proposed to the court prior to its rendering of the dissolution judgment, requested that she be awarded the contents of the marital home, except for certain items that specifically belonged to the defendant. The defendant countered

that all of the personal property be divided equally with any disputes regarding the allocation of these assets being settled by binding arbitration. Furthermore, neither party itemized these assets or attributed values to them in a manner that was consistent with the proposed distribution of their other assets.

It is not necessary, therefore, to remand the case for reconsideration of all of the court's financial orders. See *Montoya* v. *Montoya*, 91 Conn. App. 407, 438, 881 A.2d 319 (2005), rev'd in part on other grounds, 280 Conn. 605, 909 A.2d 947 (2006). Accordingly, we issue a limited remand ordering the court to review only the allocation of the parties' personal property set forth in §§ six[9] and seven[10] of the court's May 30, 2007 financial orders in its memorandum of decision.[11]

[9] Section six of the court's financial orders provides: "The [plaintiff] shall receive as her own assets, free and clear of any claims by the [defendant], the following items of personal property:

"[a] The $800 loan set forth in the [defendant's] December 12, 2006 financial affidavit. Paragraph IV H.5.

"[b] 2002 Mercedes Benz E320 automobile.

"[c] All furniture, furnishings, fixtures, bric-a-brac and appliances located at 307 Okenoke Ridge, New Canaan, Connecticut.

"[d] [The] [p]laintiff's attorney's retainer held on account."

[10] Section seven of the court's financial orders provides: "The defendant shall receive as his own assets, free and clear of any claims by the [plaintiff], the following items of personal property:

"[a] 2005 Porsche Carrera S automobile.

"[b] Unvested IBM restricted stock.

"[c] Unvested IBM stock options.

"[d] Wine collection valued in the [defendant's] financial affidavit at $19,753 regardless of the current fair market value of [the] said wine collection.

"[e] [The defendant's] personal [e]ffects such as clothing, books, documents, sports equipment, gifts he received, material from his family and employment and the Kraus oil painting, that are currently located at 307 Okenoke [Ridge], New Canaan, Connecticut;

"[f] All furniture, furnishings, fixtures, bric-a-brac, and appliances in the defendant's current residence, Norwalk, Connecticut.

"[g] [The] [d]efendant's attorney's fees held on account."

[11] The plaintiff claims that the defendant's failure to list specific values for the disputed personalty in his financial affidavit was "an admission" that these assets were valueless. See *O'Bymachow* v. *O'Bymachow*, supra, 12

## II

## PETITION FOR NEW TRIAL

Finally, we address the defendant's claim that the court improperly granted the plaintiff's motion to strike the defendant's petition for a new trial for failure to state a claim on which relief could be granted. We agree with the defendant.

The following additional facts are necessary for our resolution of the defendant's claim. On September 6, 2006, the first day of the marital dissolution trial, the plaintiff offered a certain three page letter as her first exhibit. The letter purported to be from an individual who the plaintiff believed to be the husband of the defendant's alleged paramour as well as an incarcerated sex offender. As far as the record reflects, this letter discussed certain events that precipitated the parties' marital breakdown and was highly prejudicial to the defendant. Accordingly, the defendant objected to its admission into evidence, and preliminary argument concerning the admissibility of the letter followed.

On October 17, 2006, the defendant filed a motion in limine to preclude this letter from evidence. The

Conn. App. 118–19 (court entitled to conclude that " 'unknown' " value attributed to plaintiff's businesses in financial affidavit was zero). Consequently, the plaintiff argues that any error with respect to the distribution of this property was either harmless or induced by the defendant.

Although we recognize that "a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding"; (internal quotation marks omitted) *Spilke* v. *Spilke*, 116 Conn. App. 590, 596, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009); we conclude that the defendant was not attempting to misrepresent the value of his assets in his financial affidavit. Unlike the party in *O'Bymachow*, the defendant did not attribute an "unknown" value to these assets. Instead, the defendant simply proposed that all of the personal property that was not specifically valued in his affidavit—including the disputed furniture, furnishings, fixtures and appliances in the marital home—be divided equally. Therefore, the plaintiff's claim that the court's error was harmless or induced by the defendant's failure to value this personalty fails.

defendant claimed that the letter could not be authenticated properly and that the substance of the letter was inadmissible hearsay. Additionally, the defendant requested that any discussion relating to the specific content of the letter, potentially for the purpose of weighing the prejudicial nature of the document against its probative value, be conducted outside the presence of Judge Tierney. The following day, Judge Tierney ruled that the letter was inadmissible.

In July, 2007, counsel for the defendant, while reviewing the court file, inspected a document entitled "Plaintiff's Second Request for Production of Documents at Trial" (request for production) that the plaintiff had filed with the court on October 12, 2006, just days before the court's evidentiary ruling on the controversial letter. The defendant's counsel discovered that a copy of the inadmissible letter had been attached to this request for production by the plaintiff's counsel and, thus, improperly filed and mistakenly included in the court file.

On the basis of this discovery, the defendant filed a petition for a new trial in August, 2007. In his petition, the defendant claimed that the improper filing of the request for production and the attachment of a copy of the highly prejudicial inadmissible letter thereto "constitute[d] mispleading and [was] reasonable cause to order a new trial." Furthermore, the defendant contended that the introduction of the letter into the court file by the plaintiff's counsel was a blatant attempt to bias the court by placing the letter before it in a deceitful manner that bypassed the rules of evidence.

The plaintiff subsequently filed a motion to strike the defendant's petition for a new trial. She asserted that the petition was legally insufficient because the improper

filing of the request for production was not a misplead-
ing within the definition of § 52-270 (a).[12] The court
agreed with the plaintiff and concluded that the docu-
ment filed by her counsel was technically not a pleading.
In the court's view, therefore, the improper filing of
this document could not constitute a mispleading. The
court did note that, in addition to circumstances relating
to a mispleading, the statutory basis for a new trial also
includes situations involving " 'other reasonable cause'
. . . ." The court, however, "left for another day" the
determination of whether the defendant could satisfy
the reasonable cause provision of § 52-270 (a). Accord-
ingly, the court granted the plaintiff's motion to strike
the defendant's petition for failure to state a claim. The
defendant thereafter appealed.[13]

We begin our analysis by setting forth the appropriate
standard of review. "Because a motion to strike chal-
lenges the legal sufficiency of a pleading and, conse-
quently, requires no factual findings by the trial court,
our review of the court's ruling on the [defendant's
motion] is plenary. . . . We take the facts to be those
alleged in the complaint that has been stricken and we
construe the complaint in the manner most favorable
to sustaining its legal sufficiency. . . . Thus, [i]f facts
provable in the complaint would support a cause of
action, the motion to strike must be denied. . . . More-
over, we note that [w]hat is necessarily implied [in
an allegation] need not be expressly alleged. . . . It is
fundamental that in determining the sufficiency of a
complaint challenged by a defendant's motion to strike,
all well-pleaded facts and those facts necessarily

---

[12] General Statutes § 52-270 (a) provides in relevant part: "The [court]
may grant a new trial . . . for mispleading . . . or for other reasonable
cause . . . ."

[13] Portions of the plaintiff's brief that refer to the colloquy between Judge
Tierney and the defendant concerning whether Judge Tierney actually
reviewed the improperly filed letter have been stricken. Accordingly, we do
not consider this content in our disposition of this case.

implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Bloom* v. *Miklovich*, 111 Conn. App. 323, 328, 958 A.2d 1283 (2008).[14]

"Although . . . § 52-270 permits the court to grant a new trial upon proof of reasonable cause, the circumstances in which reasonable cause may be found are limited. . . . The basic test of reasonable cause is whether a litigant, despite the exercise of due diligence, has been deprived of a fair opportunity to have a case heard on appeal. . . . A new trial may be granted to prevent injustice in cases where the usual remedy by appeal does not lie or where, if there is an adequate remedy by appeal, the party has been prevented from pursuing it by fraud, mistake or accident." (Internal quotation marks omitted.) *Murphy* v. *Zoning Board of Appeals*, 86 Conn. App. 147, 152–53, 860 A.2d 764 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1080 (2005). "[Section 52-270] does not furnish a substitute for, nor an alternative to, an ordinary appeal, but applies only when no other remedy is adequate and when in equity and good conscience relief against a judgment should be granted." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, 59 Conn. App. 716, 724, 757 A.2d 1215 (2000).

The plaintiff does not contend that the defendant cannot satisfy the reasonable cause test for a new trial

---

[14] "A petition for a new trial is collateral to the action in which the new trial is sought and by its nature is a distinct and separate proceeding. . . . [It] is instituted by writ and complaint served upon the adverse party in the same manner as in any other new action. Although the action so stated is collateral to the action in which the new trial is sought, it nevertheless is a distinct suit in itself." (Citation omitted; internal quotation marks omitted.) *Redding* v. *Elfire, LLC*, 98 Conn. App. 808, 818–19, 911 A.2d 1141 (2006). Because the petition for a new trial is essentially the procedural equivalent of a complaint, it follows that the broad construction of pleadings applies with equal force to a petition for a new trial.

on the basis of the underlying facts. Instead, she maintains that the petition itself is technically deficient in that it fails to set forth adequately the claim that a new trial is warranted for "other reasonable cause." Consequently, the defendant's petition for a new trial, according to the plaintiff, fails to state a cause of action on which relief can be granted.

"[T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the [petition] is insufficient to allow recovery." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 786, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009).

Upon our careful examination of the petition, construing it in the light most favorable to the defendant, we conclude that a claim for a new trial on the basis of "other reasonable cause" was sufficiently pleaded. There is no question that the plaintiff's filing of the request for production violated Practice Book § 13-9 (e), which provides that "[t]he party serving such request or notice of requests for production shall not file it with the court." Furthermore, although the primary thrust of the petition is centered on the claim that the filing of the request for production and accompanying inadmissible letter constituted a mispleading, the petition also alleges certain actions on the part of the plaintiff that go beyond the scope of a mispleading, including the allegation that the improper filing "was a blatant attempt to bias the court with respect to important issues in the trial." The petition further alleges that the plaintiff's improper filing of the letter sought to take

advantage of Judge Tierney's "well known reputation . . . for diligently reviewing the entire file in pending actions before [him] . . . ." The reasonable inferences that can be drawn from this allegation are that Judge Tierney accidentally read the offending letter when reviewing the file, and that it influenced his dissolution judgment and accompanying financial orders. Accordingly, the allegations set forth in the petition and their accompanying implications, if proved, could support the granting of a new trial for "other reasonable cause." See *Davis* v. *Fracasso*, 59 Conn. App. 291, 298, 756 A.2d 325 (2000) ("[o]ther reasonable cause includes every cause for which a court of equity could grant a new trial, such as, for example, fraud, accident and mistake" [internal quotation marks omitted]). We conclude, therefore, that the court improperly granted the plaintiff's motion to strike the defendant's petition for failure to state a claim on which relief could be granted.[15]

The dissolution judgment is reversed only as to the erroneous orders concerning the parties' tangible personal property and the case is remanded for a new hearing on those orders. The dissolution judgment is affirmed in all other respects. The judgment on the petition for a new trial is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[15] Because we conclude that the defendant has pleaded sufficient facts to state a claim for a new trial pursuant to the reasonable cause provision of § 52-270 (a), we decline to address whether the improperly filed request for production technically constituted a mispleading.