******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MATTHEW G. BROWN *v.* NANCY BROWN
(AC 34314)

Beach, Alvord and Sullivan, Js.

*Argued November 13, 2013—officially released February 4, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Olear, J.)

*Louis Kiefer*, for the appellant (plaintiff).

*Steven R. Dembo*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Matthew G. Brown, appeals from the judgment of the trial court dissolving his marriage to the defendant, Nancy Brown. On appeal, the plaintiff claims that the court (1) improperly determined that it was in the best interests of the parties' minor child to relocate to Canada to reside primarily with the defendant, (2) abused its discretion in its award of alimony to the defendant and improperly calculated the amount of child support that he was required to pay under the child support guidelines, (3) abused its discretion in limiting the circumstances under which he could seek modification of his alimony obligation, and (4) improperly ordered the parties to file a joint tax return for the 2011 tax year. We reverse the judgment of the trial court with respect to its order to file a joint tax return and affirm the judgment in all other respects.

The following facts and procedural history are relevant to the plaintiff's appeal. The court dissolved the parties' twenty-one year marriage on January 6, 2012. At the time of the dissolution, the parties had two minor sons, aged seventeen[1] and twelve. The court found that the marriage had broken down irretrievably and that neither party was solely responsible for the breakdown of the marriage. The court entered orders with respect to, inter alia, custody of the minor children and the primary residence of the younger son,[2] the plaintiff's obligation to pay alimony and child support, and the filing of a joint tax return for the 2011 tax year.

The plaintiff appealed from the dissolution judgment on February 14, 2012.[3] On August 30, 2012, the defendant filed a motion for articulation and a motion for rectification asking the trial court to "clarify" or "rectify" its order with respect to the filing of the joint tax return. The court held a hearing on September 26, 2012, and, at that time, acknowledged that its January 6, 2012 memorandum of decision did not reflect the court's intent that the parties would have to agree before they could be ordered to file a joint tax return. The court then stated that it was willing to enter an order, if the parties would so stipulate, "clarifying and correcting" the decision to reflect the court's intention that the requirement to file a joint tax return was applicable only if the parties agreed to file jointly for the 2011 tax year. The parties did not stipulate, and the plaintiff now claims that this court should order a new hearing and determination regarding all of the financial orders of the judgment of dissolution.

I

The plaintiff's first claim on appeal is that the court improperly determined that it was in the best interests of the parties' younger son to relocate to Ontario, Canada, to reside primarily with the defendant. The plaintiff argues that the court "failed to follow General Statutes

§ 46b-56 (b)"[4] because their son would not be provided with "the active and consistent involvement of both parents consistent with their abilities and interest." He claims that because of the "difficulty of efficient airline flights, and [his] demanding schedule as a transplant surgeon," he will be unable to exercise the visitation provided by the court.

The following additional facts are relevant to this claim. The defendant was born and raised in Canada and attended college in Canada. She completed a three year nursing program and was licensed as a registered nurse in Canada. The defendant left Canada and secured employment as a nurse at Duke University, where she met the plaintiff during his internship. On August 11, 1990, they married in Ontario, Canada, and the parties moved to several locations between 1991 and 1997 in furtherance of the plaintiff's career development. The plaintiff obtained a fellowship in Ontario, Canada, and the parties resided there between 1995 and 1997. The defendant wanted to remain in Canada once the fellowship had been completed, and the plaintiff agreed to seek a permanent placement in Canada but was unsuccessful in his attempts. In 1997, the parties moved to West Hartford, and the plaintiff is currently employed as a transplant surgeon at Hartford Hospital.

The defendant was supportive of the plaintiff and left employment that she found rewarding when he wanted to relocate to take advantage of his professional opportunities. The defendant ceased working outside of the home when their first son was born in 1994, and her nursing license expired in 1995. In 1999, the parties' second son was born, and the defendant continued to stay at home and attended to the children and their needs while the plaintiff worked long hours. The children are citizens of both the United States and Canada, and they have spent a significant portion of their childhood in Canada with the defendant and her extended family.

In the beginning of 2009, the plaintiff told the defendant that the marriage was over. Although the parties attempted marriage counseling in the spring of 2009, the plaintiff decided that he no longer wanted to be married and moved out of the marital home in August, 2009. Shortly thereafter, the defendant enrolled in a nursing refresher course that she completed in April, 2010. She believed that if she obtained her nursing license in Connecticut, that license would be recognized through reciprocity in Canada. The defendant later discovered that there was no reciprocity. She received a letter dated October 5, 2011, from the college of nurses in Ontario, Canada, advising her that she would have to complete several courses and a registered nurse clinical practice in order to obtain her Canadian license.

The plaintiff commenced this dissolution action on February 9, 2010. The plaintiff was aware that the defen-

dant wanted to move back to Canada. The parties and their attorneys signed a stipulation dated February 22, 2011, which was entered as an order of the court, regarding pendente lite alimony and the division of their 2010 federal tax refund. That stipulation additionally contained the following provision: "[The defendant] is relocating to Canada. After she relocates on or about March 5, 2011, [the plaintiff] shall have exclusive use of the marital home in West Hartford." The older son went to live with the defendant in Canada after the school year ended in 2011, and decided to stay there. The younger son continued to live with the plaintiff and a nanny in West Hartford. At the time of the trial, the plaintiff sought sole custody of the younger son. The defendant sought joint custody of the younger son with his primary residence to be with her in Canada.

The court, after a six day trial, entered orders awarding the parties joint legal custody of the children. The parties already had agreed that the older son's primary residence would be with the defendant in Canada. With respect to the younger son, the court found that it was in his best interests to relocate to Ontario, Canada, to reside primarily with the defendant. In making that determination, the court stated that it had considered the criteria set forth in § 46b-56 and applicable case law. The court made the following findings in its January 6, 2012 memorandum of decision: (1) the defendant's decision to relocate to Canada was "reasoned and well thought out"; (2) the defendant's extended family lived in Canada; (3) the children had spent significant periods of time in Canada; (4) the defendant would use her best efforts to continue to foster the relationship between the plaintiff and the younger son; (5) the younger son, by his conduct, indicated his preference to live in Canada; (6) the defendant's reasons for moving to Canada were valid and included the betterment of her life and the lives of the children; (7) the defendant's "nurturing and supportive style" would help the younger son's transition with respect to the relocation; and (8) the plaintiff had the financial resources to visit the children in Canada and to have them visit him in Connecticut.

The plaintiff challenges the court's findings and claims that the court could not reasonably conclude that it was in the younger son's best interests to relocate to Canada to reside primarily with the defendant. "Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he

authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 185–86, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

The court's findings are supported by the record. Those findings support the court's determination that it would be in the best interests of the minor son to relocate to Canada to reside primarily with the defendant. Although the plaintiff argues that other testimony at trial favors a different result, he essentially requests that we reassess and reweigh the evidence in his favor. "[W]e do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Quinto* v. *Boccanfusco*, 139 Conn. App. 129, 135, 54 A.3d 1069 (2012). The court expressly stated that it considered the criteria set forth in the applicable statutes and case law. "[T]he trial court is presumed to have applied the law correctly, and it is the burden of the appellant to show to the contrary." (Internal quotation marks omitted.) *Emrich* v. *Emrich*, 127 Conn. App. 691, 703, 15 A.3d 1104 (2011). For these reasons, we conclude that the court did not abuse its broad discretion and properly based its decision on the best interests of the minor son.

## II

The plaintiff's next claim is that the court abused its discretion in its award of alimony to the defendant and improperly calculated the amount of child support that he was required to pay under the child support guidelines. He argues that the court improperly (1) failed to find an earning capacity for the defendant, (2) applied the child support guideline percentage to the net income of the plaintiff before deducting the alimony that he was ordered to pay the defendant, and (3) failed to examine the actual needs of the children in determining the amount due under the guidelines.[5] We are not per-

suaded.

### A

We first address the plaintiff's claim that the court should have determined that the defendant had an earning capacity when it entered the financial orders with respect to alimony and child support. In its memorandum of decision, the court found that the defendant testified credibly that it would take her three years to obtain her nursing license in Canada. The court stated: "Due to the requirements that she must meet to obtain her license in Ontario, the court does not find that she has an earning capacity at this time. She will need to spend the next three years satisfying the requirements to obtain her license and attending to the children." The plaintiff claims that the court's determination was improper because the defendant could have stayed in the United States, taken a test in Connecticut for recertification as a nurse, and secured a nursing position in this country for approximately $67,000 a year.

"In marital dissolution proceedings, *under appropriate circumstances* the trial court *may* base financial awards on the earning capacity rather than the actual earned income of the parties . . . when . . . there is specific evidence of the [party's] previous earnings. . . . It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in [the payor's] field." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hart* v. *Hart*, 19 Conn. App. 91, 94–95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 535 (1989).

In the present case, the defendant has not worked as a nurse since 1994, coincident with the birth of their first child. Her nursing license expired in 1995. The court determined that the defendant had significant familial ties to Canada and that her reasons for relocating from the United States to Canada were valid. After three years of course work and clinical practice in Canada, the defendant could be recertified as a registered nurse and secure employment in her profession in her country of residence. At the time of the dissolution, the defendant was unemployed and the plaintiff's gross annual income as a transplant surgeon was $423,228.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . No single criterion is preferred over others, and the trial court has broad discretion in varying the weight placed on each criterion under the circumstances of each case." (Internal quotation marks omitted.) *Jungnelius* v. *Jungnelius*, 133 Conn. App. 250, 262, 35 A.3d 359 (2012). The court expressly stated that it had considered all of the relevant statutes before rendering its judgment. With respect

to its financial orders, the record supports the court's determinations that the defendant had no earning capacity at the time of the dissolution judgment and that she needed three years to satisfy the requirements for obtaining her nursing license in Canada, where she resided. We cannot conclude that the court abused its broad discretion under the circumstances of this case.

B

The plaintiff further claims that the court improperly applied the child support guideline percentage to his net income before deducting the amount of alimony that he was ordered to pay the defendant. He argues that the court calculated his payment of child support based on income that he did not have. The plaintiff cites no statutes or case law in support of this argument.

The provisions in the child support guidelines[6] compel a different conclusion. Section 46b-215a-1 (17) of the Regulations of Connecticut State Agencies defines " '[n]et income,' " for purposes of calculating the presumptive amount of child support, to be "gross income minus allowable deductions." Section 46b-215a-1 (1) (I) defines " '[a]llowable deductions' " to include "court-ordered alimony and child support awards *for individuals not involved in the support determination* . . . ." (Emphasis added.) Because of the plain language of the child support guidelines, we conclude that this claim of the plaintiff is without merit.

III

The plaintiff's next claim is that the court abused its discretion in limiting the circumstances under which he could seek modification of his alimony obligation. Specifically, he argues that the cohabitation and safe harbor provisions of the court's orders "are inconsistent with the overall public policy which favors modification."

In its memorandum of decision, the court recited the appropriate statutory factors for an award of alimony and entered the following orders: "[T]he plaintiff shall pay to the defendant alimony in the amount of $2500 per week for a period of three years from the date of the dissolution and then in the amount of $2000 per week for a period of six years (for a total duration of the alimony award of nine years, subject to earlier termination as set forth below). . . . Alimony shall terminate on the earliest of the following: (i) the death of either party; (ii) the remarriage of the defendant; (iii) nine years from the date of dissolution; or (iv) the defendant's cohabitation with an unrelated person pursuant to General Statutes § 46b-86 (b).[7] . . . The defendant shall be permitted to earn gross income from employment of $75,000 per year and the plaintiff shall be permitted to earn gross income from employment of $475,000 a year without it being considered a substantial change [in] circumstances for a modification of

alimony."

"It is a well settled principle of matrimonial law that courts have the authority under § 46b-86 to preclude the modification of alimony awards. . . . Section 46b-86 (a) itself provides in relevant part that [*u*]*nless and to the extent that the decree precludes modification* . . . any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . . This statute clearly permits a trial court to make periodic awards of alimony nonmodifiable." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Marshall* v. *Marshall*, 119 Conn. App. 120, 128–29, 988 A.2d 314, cert. granted on other grounds, 296 Conn. 908, 993 A.2d 467 (2010).

The plaintiff first challenges the court's alimony award by claiming that the court "prohibited the plaintiff from seeking modification of alimony in the event that the defendant cohabits with Paul Peggie, her relative, during the next three years . . . ." During the trial, there had been testimony that the defendant began a romantic relationship with Peggie, a longtime friend and distant relative, in November, 2009. The court referenced this testimony at page seventeen of its forty-five page decision. The court's alimony award, including the circumstances under which it was nonmodifiable, was set forth at pages thirty-two and thirty-three of its decision. In the alimony section of the opinion, the court stated that "[a]limony shall terminate on the earliest of the following: (i) the death of either party; (ii) the remarriage of the defendant; (iii) nine years from the date of dissolution; or (iv) the defendant's cohabitation with an unrelated person pursuant to . . . § 46b-86 (b)." The plaintiff claims that, by this language, the court has prohibited modification if the defendant cohabits with Peggie during the next three years.

The court did not preclude the plaintiff from seeking a modification of alimony if the defendant cohabits with Peggie. The subject provision pertains to the automatic termination of alimony under certain circumstances. Furthermore, the court expressly referred to § 46b-86 (b) in the cohabitation clause of its orders. This referenced statute provides in relevant part that the court "may, in its discretion . . . modify such judgment . . . upon a showing that the party receiving the periodic alimony is living with *another person* under circumstances" that should result in a modification. (Emphasis added.) General Statutes § 46b-86 (b). The fact that Peggie is a distant relative, as the court mentioned earlier in the opinion, does not mean that the court considered him to be a related person for purposes of the alimony portion of the court's order, particularly in light of the fact that the court conditioned its applicability on § 46b-86 (b).[8]

With respect to the safe harbor provisions regarding the defendant's future income, the plaintiff's argument is simply a general pronouncement that "the overall public policy . . . favors modification." As previously discussed, however, the statute expressly authorizes a trial court to preclude the modification of periodic alimony awards, and the court's factual findings in this case, as detailed earlier in this opinion, support the limitations placed on future modification of the court's award. Accordingly, the court did not abuse its broad discretion in limiting the circumstances under which the plaintiff could seek modification of his alimony obligation.

IV

The plaintiff's final claim is that the court improperly ordered the parties to file a joint tax return for the 2011 tax year. He argues that *Kane* v. *Parry*, 24 Conn. App. 307, 316, 588 A.2d 227 (1991), precludes such an order, and he requests a new hearing on all of the financial orders claiming "a break in the carefully crafted mosaic." While we agree that the court did not have the authority to order the filing of a joint tax return in the absence of the parties' agreement, we disagree that reversal of that portion of the judgment necessitates a new hearing and determination regarding all of the financial orders of the judgment of dissolution.

"A trial court has the authority to order a party to file a joint federal personal income tax return if there was a prior agreement between the parties to do so. . . . In the absence of such an agreement, the trial court cannot order the plaintiff to file joint federal personal income tax returns." (Citation omitted.) *Kane* v. *Parry*, supra, 24 Conn. App. 315–16. In the present case, the record does not show an agreement to file a joint tax return for the 2011 tax year. Accordingly, that order was improper.

The trial court acknowledged that its memorandum of decision failed to include language regarding the prerequisite agreement of the parties before it could issue such an order. The court informed the parties that the omission was unintentional, and the court offered to clarify and correct its order if the parties would so stipulate. The record does not disclose a stipulation regarding the subject tax return. Accordingly, that portion of the judgment requiring the parties to file a joint tax return for the 2011 tax year must be reversed.

Contrary to the plaintiff's argument, however, it is not necessary for us to remand the case for a new hearing on all of the financial orders because we conclude that reversal of that portion of the judgment ordering the filing of a joint tax return will not impact the "carefully crafted mosaic" of the financial awards. See *Morrone* v. *Morrone*, 142 Conn. App. 345, 348, 64 A.3d 803 (2013). This is particularly evident in light of the

court's remarks at the September 26, 2012 hearing on the defendant's motion for rectification and motion for articulation. At that time, the court stated: "[T]he court acknowledges that the wording was not as artful as I would have wanted and in hindsight sort of properly reflected and did not properly reflect that the parties would need to agree to sign a joint tax return. I do argue that as a discreet issue, I don't think that it's of such a magnitude to implicate the mosaic that was crafted . . . ." Thus, we agree with the plaintiff that the court could not impose such an order in the absence of the parties' agreement to file jointly, but we disagree that the reversal of that order requires a new hearing and determination of all of the court's financial orders.

The judgment is reversed only as to the order requiring the parties to file a joint federal tax return for the 2011 tax year and the case is remanded for further proceedings consistent with this opinion with respect to that issue only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] At the time of oral argument before this court, counsel for the plaintiff acknowledged that the older son had reached the age of majority.

[2] The parties had agreed that the older son's primary residence would be with the defendant in Ontario, Canada.

[3] The plaintiff filed a motion for an extension of time to file an appeal that was granted by the court on January 25, 2012.

[4] General Statutes § 46b-56 (b) provides in relevant part: "In making or modifying any order [re: custody, care, education, visitation and support of children], the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ."

[5] In his appellate brief, the plaintiff also claims that the court improperly (1) failed to examine the actual needs of the children when it determined the child support award under the child support guidelines, (2) applied a shared parenting deviation rather than a split custody formula under the child support guidelines, (3) calculated the arrearage for child support, and (4) ordered him to pay a percentage of expenses for the children's camps and extracurricular activities. We carefully have reviewed these claims and conclude that they are without merit.

[6] "The guidelines are defined as the rules, principles, schedule and worksheet established under [the applicable sections] of the Regulations of Connecticut State Agencies for the determination of an appropriate child support award . . . ." (Internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 91, 995 A.2d 1 (2010).

[7] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

[8] At the time of oral argument before this court, counsel for the defendant stated that he believed the subject language in the court's memorandum of decision would not preclude the plaintiff from filing a motion for modification of alimony if the defendant cohabited with Peggie.